## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

PROMOVE, INC., D/B/A LIGHTNING
LOGISTICS, AND LOGISYS, INC.
D/B/A BELTMANN INTEGRATED
LOGISTICS,

Court File No.: 0:18-cv-01196-WNW-
KMM

                    Plaintiffs,

vs.

MARK SIEPMAN, JOSEPH
HAMMERSLOUGH, SUNSET
TRANSPORTATION LV, INC., AND
TANTARA TRANSPORTATION
GROUP,

                    Defendants.

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR IN THE ALTERNATIVE, DISMISS BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*

Defendants Mark Siepman ("Siepman"), Joseph Hammerslough ("Hammerslough"), Sunset Transportation LV, Inc. ("Sunset"), and Tantara Transportation Group ("Tantara") (collectively, "Defendants"), by and through counsel, pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(3), hereby submit Defendants' Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction over the Defendants, or in the alternative, based on the Doctrine of *Forum Non Conveniens*.

## PRELIMINARY STATEMENT

The Individual Defendants worked for the Corporate Plaintiffs in the State of Nevada before leaving to work for the Corporate Defendants in the State of Nevada. Plaintiffs' allege that the Defendants unlawfully solicited away their employees in Nevada and customers in Nevada, and did so utilizing confidential and trade secret information which resides in Nevada. The only basis Plaintiffs have alleged for jurisdiction in Minnesota is that Siepman and Hammerslough contractually agreed that disputes were to be adjudicated in Minnesota. However, Plaintiffs failed to provide any executed agreements, and in any event such provisions are not determinative. Regardless, unexecuted agreements are unenforceable under the Statute of Frauds, and contrary to the express terms in the parties' executed Letter of Intent (**Exhibit 1**) which required all terms of their relationship to be in writing and executed by the parties to have any effect. The State of Minnesota does not have jurisdiction over any of the Defendants. On the other hand, Nevada clearly does and is a much more convenient forum. The slogan "What Happens in Vegas – Stays in Vegas" is particularly appropriate in this case.

## FACTS

This case arises out of Siepman and Hammerslough's transition from their former employment with Beltmann in Nevada to their current employment with Tantara in Nevada. (*See generally* Complaint; Hammerslough Declaration, ¶ 1; Siepman Declaration, ¶ 1.)

Siepman and Hammerslough previously owned and operated Lightning Logistics, LLC. (Complaint, ¶ 8.) Lightning Logistics, LLC was located in Las Vegas, Nevada. (*Id.*) In September 2012, Beltmann ("Beltmann") purchased Lightning Logistics, LLC. (Complaint, ¶ 10.) After the purchase, Siepman and Hammerslough worked for Beltmann. (Complaint, ¶ 10.) Beltmann is not incorporated under the laws of the State of Minnesota, and it does not have a principal place of business in Minnesota. (Complaint, ¶ 2.) The Complaint contains no allegations regarding any connection between Beltmann and the State of Minnesota. (*See* Complaint.) Additionally, the Complaint contains no allegation that either Siepman or Hammerslough worked for Beltmann in Minnesota. (*Id.*)

At all relevant times, Siepman was and is a citizen and resident of Nevada. (Complaint, ¶ 3; Siepman Declaration, ¶ 2.) Hammerslough, a resident of Arizona, works predominately in Nevada and maintains a residence in Nevada. (Hammerslough Declaration, ¶¶ 2-3.) Neither Siepman nor Hammerslough owns real estate or other property in Minnesota. (Hammerslough Declaration, ¶ 4; Siepman Declaration, ¶ 3.) Neither has registered to vote in Minnesota. (Hammerslough Declaration, ¶ 5; Siepman Declaration, ¶ 4.) The Complaint contains no factual allegations that either Siepman or Hammerslough worked in Minnesota, targeted customers in Minnesota, or even solicited employees in Minnesota. (*See* Complaint.) Indeed, neither conducts nor has recently conducted business within Minnesota. (Hammerslough Declaration, ¶ 5; Siepman Declaration, ¶ 4.) The Complaint contains no allegations that either Siepman or Hammerslough ever worked in any location other than Nevada. (*See* Complaint.)

The sole nexus between Siepman and Hammerslough and Minnesota appears to be Plaintiffs' conclusory legal assertion that Siepman and Hammerslough are bound by "executed" employment agreements providing for jurisdiction in Minnesota. (*See* Complaint, ¶ 7.) However, Plaintiffs failed to annex executed copies of the purported employment agreements to the Complaint. (*See generally* Complaint.)

Similarly, the Complaint lacks any factual allegations that either Sunset or Tantara have minimum contacts with Minnesota. (*See* Complaint.) Rather, the Complaint merely contains the conclusory allegation that "a substantial part of the events or omissions giving rise to the claims occurred in this district." (Complaint, ¶ 7.) The Complaint cites to no contract or agreement by which either Sunset or Tantara consented to jurisdiction in Minnesota. (*See* Complaint.) The Complaint contains no allegation that Sunset or Tantara solicited employees in Minnesota. (*Id.*) The Complaint is devoid of any factual allegation regarding any "event" or "omission" by either Sunset or Tantara that occurred within Minnesota. (*Id.*)

In short, this is a dispute involving companies and employees in Nevada. (*See generally* Complaint.)

## ANALYSIS

This Court lacks personal jurisdiction over the Defendants. Accordingly, the Complaint should be dismissed. Even assuming, *arguendo*, that personal jurisdiction exists, the Court should exercise its discretion to dismiss the Complaint under the doctrine of *forum non conveniens*.

**I.      This Court Cannot Exercise Personal Jurisdiction Over Defendants.**

Jurisdiction cannot be exercised over Defendants without violating constitutional due process because Defendants have not purposefully availed themselves of the privileges of conducting activities in Minnesota nor do they have the required "minimum contacts" with this forum.

**A.  The Standard For Exercising Personal Jurisdiction in Minnesota.**

A court can exercise personal jurisdiction over a nonresident defendant only if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19 (2002), is satisfied and (2) the exercise of personal jurisdiction does not offend the constitutional requirement of due process. *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 613-14 (8th Cir. 1998). Minnesota's long-arm statute, Minn. Stat. § 543.19, extends jurisdiction to the limit consistent with federal due process. *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2005), *cert. denied*, 549 U.S. 883 (2006).

Due process requires that a defendant have sufficient "minimum contacts" with the forum such that bringing suit in that forum does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The essential question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)). The minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately

prior to the filing of the lawsuit. *Id*. (citing *Clune v. Alimak AB,* 233 F.3d 538, 544 n. 8 (8th Cir. 2000)).

Personal jurisdiction can be established by showing either general personal jurisdiction or specific personal jurisdiction over the defendant. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624(2014)). General jurisdiction provides jurisdiction over "any and all claims" against a defendant because the "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* (quoting *Daimler*, 134 S. Ct. at 754). Specific jurisdiction is proper "when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015).

The Eighth Circuit analyzes both general and specific jurisdiction together through the following five factor test: (1) the nature and quality of the defendants' contacts with the forum; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F. 3d 558, 562 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The first two factors relate to general jurisdiction, while the third factor applies only to specific jurisdiction. *Toomey v. Dahl*, 63 F. Supp. 3d 982, 989–90 (D. Minn. 2014). The third factor distinguishes specific jurisdiction from general jurisdiction. *Id.*

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). When reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider matters beyond the pleadings such as affidavits or exhibits. *See Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

**B.      Minnesota Courts Do Not Have General Jurisdiction Over Defendants.**

The first two factors for general jurisdiction as to Defendants in Minnesota are non-existent in this case.   For a court to constitutionally assert general jurisdiction over a nonresident defendant, the defendant must have "continuous and systematic" contacts with the forum state. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 30 (Minn. 1995) (citing *Real Properties, Inc. v. Mission Ins. Co.,* 427 N.W.2d 665, 669 (Minn.1988)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011).

Siepman is a resident of Nevada; his domicile is Nevada.  (Siepman Declaration ¶ 2.)  Hammerslough is a resident of Arizona, but he maintains a residence in Nevada and works predominately in Nevada. (Hammerslough Declaration ¶ 3.) Hammerslough has never conducted business in Minnesota.  (*Id*. at ¶ 6.)   Siepman has never conducted business in Minnesota on behalf of ProMove, Inc. and Logisy's Inc. (Siepman Declaration ¶ 5.)  In fact, he has not conducted business in the State of Minnesota since the late 1980's. (*Id.*)  Siepman and Hammerslough do not own real estate or other property in Minnesota. (Siepman  Declaration  ¶  3,  Hammerslough  Declaration  ¶  4.)    They  have  also  never

registered to vote in Minnesota. (Siepman Declaration ¶ 4, Hammerslough Declaration ¶ 5.) Accordingly, neither Siepman nor Hammerslough is subject to general personal jurisdiction of the Minnesota courts because they do not have continuous and systematic contacts with Minnesota.

Courts may constitutionally exercise personal jurisdiction over foreign corporations when the corporation's affiliations are so continuous and systematic as to "render them essentially at home in the forum state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quotation omitted). Being "at home" in the forum state is not synonymous with "doing business" in the forum state. *Id*. at 762. Here, neither Sunset nor Tantara has "continuous and systematic" Minnesota contacts. Sunset does not conduct business in Minnesota. (Sunset Declaration ¶ 2.) Tantara conducts the vast majority of its business in Nevada and any business in Minnesota has been *de minimis*, consisting of only making a few pickups and deliveries. (Tantara Declaration ¶ 7.) Defendant Tantara has no current business in Minnesota and does not market its services to customers within the State of Minnesota. (*Id*.) Tantara is a Michigan company with its principal place of business in Canton, Michigan. (Complaint, ¶ 4.) Sunset is a Nevada corporation with its principal place of business in Las Vegas, Nevada. (Complaint, ¶ 5.) Neither Tantara nor Sunset own a subsidiary in Minnesota. (Tantara Declaration ¶2, Sunset Declaration ¶ 3.) Neither Tantara nor Sunset own, lease, or possess any real property in Minnesota, nor do they maintain a post office box or telephone listing in Minnesota. (Tantara Declaration ¶3, 4, Sunset Declaration ¶ 4, 5.) The nature, quality, and quantity of Tantara and Sunset's Minnesota

8

contacts are not sufficient to impose general personal jurisdiction over them because they are not "at home" in Minnesota.

## C.     Minnesota Courts Do Not Have Specific Jurisdiction Over Defendants.

Likewise, this Court lacks specific jurisdiction over the Defendants.  Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Specific jurisdiction exists when a "defendant purposefully directs its activities at residents of the forum state, 'and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *see also Lexion Med., LLC v. SurgiQuest, Inc.*, 8 F. Supp. 3d 1122, 1128 (D. Minn. 2014) (holding that sales in the forum state were not factually related to the lawsuit and thus were insufficient to establish specific jurisdiction).

In this case, none of Plaintiffs' claims arise out of conduct occurring in Minnesota. When Siepman and Hammerslough were employed with Plaintiffs, the vast majority of their work was in Nevada.  (Siepman Declaration ¶ 9, Hammerslough Declaration ¶ 10.) Hammerslough has never conducted business in Minnesota. (Hammerslough Declaration ¶ 6.)  Siepman has never conducted business in Minnesota on behalf of ProMove, Inc. and Logisy's Inc. and has not conducted business in the State of Minnesota since the late 1980's long before the relevant time period. (Siepman Declaration ¶ 5.)  Siepman lived in Nevada

throughout his entire employment with Plaintiffs. (Siepman Declaration ¶ 9.)  As such, no activities of Siepman or Hammerslough were directed towards Minnesota.

Likewise, no activities of Sunset or Tantara were directed at Minnesota.  The Complaint does not allege that either Sunset or Tantara solicited employees working or living in Minnesota or obtained confidential information from Minnesota residents. (*See* Complaint.)  The Complaint does not allege that either Sunset or Tantara entered into a contract in which they agreed to the exercise of personal jurisdiction in Minnesota.  (*See* Complaint.)  In short, the Complaint is devoid of factual allegations regarding events purportedly occurring anywhere other than Nevada.  Accordingly, the Plaintiffs fail to establish or even allege sufficient facts to create specific jurisdiction over Sunset or Tantara.

Plaintiffs argue that personal jurisdiction exists based on contracts executed by Siepman and Hammerslough.  Plaintiffs have not produced, and Defendants do not have a copy of an "executed" Employment Agreement with the Individual Defendants. (Siepman Declaration ¶ 7, Hammerslough Declaration ¶ 9.)  Even an executed Employment Agreement would not provide sufficient contacts with Minnesota to establish personal jurisdiction. *See N. Am. Fin. Corp. v. Amgrar Gesellschaft Fur Farmlagen*, 702 F. Supp. 1435, 1439 (D. Minn. 1989) ("[M]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and a forum state.").

The Letter of Intent that was referenced in Plaintiffs' Complaint was executed in the State of Nevada by Defendants does not have a Minnesota venue or choice of law provision. (**Exhibit 1**). The purported agreements contain restrictive covenants and choice

10

of law provisions.  However, a covenant not to compete for longer than a year falls under the Statute of Frauds.  *See JAB, Inc. v. Naegle*, 867 N.W.2d 254, 256 (Minn. Ct. App. 2015); *see also* Minn. Stat. § 513.01. Pursuant to Minn. Stat. § 513.01, "[n]o action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and *subscribed by the party charged therewith*: (1) every agreement that by its terms is not to be performed within one year from the making thereof[.]"  Minn. Stat. § 513.01(emphasis added). The purported covenant not to compete in this case is for a period of 6 years (during five years of employment and for one year after). Therefore, the non-compete in this case easily falls under the Statute of Frauds.

An agreement that falls under the Statute of Frauds must be signed by the party charged with the agreement. *See O'Brien Entm't Agency, Inc. v. Wolfgramm*, 407 N.W.2d 463, 466 (Minn. Ct. App. 1987).  Here, Defendant Hammerslough is unsure of whether he ever signed the Employment Agreement. (Hammerslough Declaration ¶¶ 8, 9.)  Defendant Siepman does not recall executing an Employment Agreement. (Siepman Declaration ¶ 8.) Accordingly, unexecuted Employment Agreements are not enforceable against Defendant Hammerslough and Defendant Siepman under the Statue of Frauds because there is no evidence of a signed agreement.

Moreover, the Letter of Intent that was signed by the Individual Defendants states that any agreement between the parties contemplated by the Letter of Intent, specifically the Employment Agreement, <u>must be signed</u> and delivered to all parties to have any legal

11

effect. (**Exhibit 1, ¶ 9**). Accordingly, the Employment Agreement is of no effect pursuant

to the parties' Letter of Intent.

### D.      Minnesota's Interest and Convenience of the Parties

Minnesota has little interest in providing a forum for the dispute.  Courts recognize

that a forum's interests diminish when recovery is available in another jurisdiction.  *Kohn*

*v. La Manufacture Francaise Des Pneumatiques Michelin*, 476 N.W.2d 184, 187 (Minn.

Ct. App. 1991).  Here, the Complaint makes clear that parties have substantial connections

to the State of Nevada.  *See* Complaint.

- All of the events giving rise to the claims in this lawsuit took place in Nevada.

- All allegedly solicited employees and clients involved in this action are located or reside in Nevada. (Tantara Declaration ¶ ¶ 7, 8.)

- Siepman resides in Nevada. (Siepman Declaration ¶ 2.)

- Hammerslough maintains a residence and primarily works in Nevada. (Declaration Hammerslough ¶ 3.)

- Additionally, both Lightening and Sunset have their principal place of businesses in Las Vegas, Nevada.  (Complaint, ¶¶ 1, 5.)

- Plaintiffs regularly and routinely conduct business in Nevada.

Accordingly, Nevada's interest in providing a forum far outweigh any tangential interest

that Minnesota could have.

The convenience of the parties "'is irrelevant unless the defendant also has, as a

threshold matter, sufficient contacts with the forum state'" (*Sherburne Cty. Soc. Servs. on*

*Behalf of Pouliot v. Kennedy*, 426 N.W.2d 866, 868 (Minn. 1988) (quoting *West American*

*Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn. 1983))).  Here the Defendants

do not have sufficient contacts.  Even if Defendants had sufficient contacts with Minnesota

- which they do not - it would be much more convenient to litigate the case in Nevada as

the majority of the evidence and all of the material witnesses are in Nevada.

In short, Defendants do not have sufficient minimum contacts with Minnesota to be

subject to specific personal jurisdiction in the State of Minnesota. *Int'l Shoe* 326 U.S. at

316. The individuals and companies are principally located in Nevada.  The alleged wrongs

occurred in Nevada.  The tenuous connection of any Defendant to Minnesota is *de minimus*,

at best.  Any exercise of personal jurisdiction in this case over Defendants would offend

traditional notions of justice and fair play.  Accordingly, the Court should dismiss the

Complaint pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    In the Alternative, This Court Should Dismiss this Action On the Basis Of The Doctrine of *Forum Non Conveniens*.

Even if the Court were to find personal jurisdiction exists, the Court should still

exercise its discretion to dismiss the action under the doctrine of *forum non conveniens*.

Pursuant to the doctrine of *forum non conveniens*, when an alternative forum has

jurisdiction to hear a case, and when trial in the chosen forum would establish

oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience,

the court may, in its sound discretion, dismiss the case, even if jurisdiction and proper

venue are established. *Aero Sys. Eng'g v. Opron, Inc.*, 21 F. Supp. 2d 990, 998 (D. Minn.

1998). A court has the discretion to dismiss a lawsuit on a basis of *forum non conveniens*

if the suit "imposes a hardship [on the defendant] that does not rise to the level of a due

process violation." *Behm v. John Nuveen & Co.*, 555 N.W.2d 301, 308 (Minn. Ct. App. 1996).

To determine whether a dismissal is warranted under the doctrine of *forum non conveniens* the court must first determine if there is an adequate alternative forum available in which the dispute can be resolved. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S. Ct. 252, 258, 70 L. Ed. 2d 419 (1981); *see also Fraizer v. St. Jude Medical, Inc.,* 609 F. Supp. 1129, 1130 (D. Minn. 1985).  The court then balances factors relative to the litigants' convenience, referred to as "private interest," and factors relevant to the forum's convenience, referred to as the "public interest" factors, to determine which available forum is most appropriate for trial. These factors include: *Private interest factors:* 1) relative ease of access to sources of proof; 2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; 3) possibility of view of the premises, if view would be appropriate to the action; and 4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Public interest factors:* 1) administrative difficulties flowing from court congestion; 2) the forum's interest in having localized controversies decided at home; 3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; 4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Reid-Walen v. Hansen,* 933 F.2d 1390, 1402-03 (8th Cir. 1991).

## A.   An Adequate Forum Exists, Warranting Dismissal.

An alternative forum is available if the defendants are amenable to process in that jurisdiction, and the forum is adequate if the party will have some remedy and will not be treated unfairly. *Aero Systems Eng'g, Inc. v. Opron, Inc.,* 21 F. Supp. 2d 990, 999 (D. Minn. 1998) (citations omitted). Here, an adequate, alternative forum is the United States District Court for the District of Nevada.

All Defendants are subject to that court's personal jurisdiction in regard to this dispute and agree to accept service of process of a properly commenced action in the State of Nevada. (Siepman and Hammerslough Declarations ¶ 11, Tantara Declaration ¶ 9, and Sunset Declaration ¶ 10).  Nevada recognizes claims for all of the causes of actions alleged in Plaintiffs' Complaint, many of the claims are governed by Nevada law.  *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1170 (D. Nev. 2009) (breach of contract); *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009) (intentional interference with contractual relations); *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1180 (D. Nev. 2003) (intentional interference with prospective economic advantage); *Coury v. Robison*, 115 Nev. 84, 90, 976 P.2d 518, 521 (1999) (unjust enrichment); *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 632 (Nev. 2006) (duty of loyalty); *Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 284, 21 P.3d 16, 23 (2001) (misappropriation of trade secrets); *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 910, 193 P.3d 536, 542 (2008) (conversion).  Accordingly, Plaintiffs will not be deprived of a remedy by litigating this dispute in Nevada, not only where they

conduct operations, but where Plaintiff Lightning's principal place of business is located. (Complaint, ¶ 1.)

### B.      The *Forum Non Conveniens* Factors Favor Dismissal.

The parties' private interests make Minnesota an extremely inconvenient forum for this litigation, warranting dismissal.  First, the alleged acts forming the basis of Plaintiffs' tortious interference, unjust enrichment, breach of duty of loyalty, misappropriation of trade secrets, and conversion claims all center on conduct which occurred in Nevada and in the absence of validly executed contracts, will be governed by Nevada law.  Again, the Individual Defendants worked for Plaintiffs in Nevada. (Siepman Declaration ¶ 9, Hammerslough Declaration ¶ 10).  As an employee of Plaintiffs, Siepman resided and worked in Nevada. (Siepman Declaration ¶ 9).  Additionally, Siepman has a severe neuromuscular condition which prevents him from traveling, except for very short distances for very short periods of time. (Siepman Declaration ¶ 10). As a result, traveling to Minnesota is impossible.  Further, all previous employees or customers of Plaintiffs alleged to have been improperly solicited by Defendants are located in Nevada. (Sunset Declaration ¶ 9, Tantara Declaration ¶ 6, 8). All of the documents and confidential information at issue in this case are located in Nevada. (Sunset Declaration ¶ 6, Tantara Declaration ¶ 5).  Accordingly, virtually all of the material evidence, witnesses and documents reside in Nevada.

The location of non-party witnesses is a "critical factor" in venue determinations. *See Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.,* 594 F. Supp. 731, 733 (D. Minn. 1984). Tantara and Sunset expect to call their employees who at one time worked for

Plaintiffs, whom Plaintiffs incorrectly allege Defendants solicited to dispute Plaintiffs'

claim.  Defendants Tantara Transportation and Sunset Transportation also expect to call

clients who at one time were clients of Plaintiffs, whom Plaintiffs incorrectly allege

Defendants solicited. Again, any and all previous employees or customers of Plaintiffs

allegedly improperly solicited by Defendants are located in Nevada. (Sunset Declaration ¶

9, Tantara Declaration ¶ 6, 8). There is not a single witness Defendants anticipate as having

relevant evidence who resides in Minnesota, nor are any Minnesota witnesses either

expressly or by implication identifiable from Plaintiffs' Complaint.  The costs incurred in

having witnesses to travel to Minnesota would be a tremendous burden.

The only remote connections to Minnesota are employment agreements purportedly

containing a forum selection clause between Plaintiffs and Siepman and Hammerslough

which have not been executed. (Complaint, ¶ 7).  *See Royal Bed & Spring Co., Inc. v.*

*Famossul Industria e Comercio de Moveis Ltda.,* 906 F.2d 45, 51 (1st Cir. 1990)

(dismissing case as for lack of jurisdiction holding that the forum selection provision was

not dispositive).

Because sources of proof, compulsory process for attendance of unwilling witnesses

and the cost of obtaining attendance of willing witnesses, the location of evidence and

practical problems that would make trial of this case convenient, expeditious and

inexpensive all favor the litigation of this matter in Nevada.  Defendants' motion to dismiss

should be granted as private interests favor resolution of this dispute in Nevada. *See*

*DeMelo v. Lederle Laboratories,* 801 F.2d 1058 (8th Cir. 1986) (dismissing federal case on

*forum non conveniens* grounds where "substantial" amount of defendant's evidence found in alternative forum).

>        **C.        The Applicable Public *Forum Non Conveniens* Factors Favor Dismissal.**

The public interest factors also favor dismissal. Specifically, Plaintiffs' claims for breach of contract, tortious interference, misappropriation of trade secrets, unjust enrichment, duty of loyalty, and conversion claims will all be resolved under Nevada substantive law, giving Nevada more interest in the result. *See, e.g., Restatement (Second) of Conflicts of Laws,* § 145, comment f (principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the parties' rights and liabilities); *Pony Computer v. Equus Computer Sys. of Missouri,* 162 F.3d 991, 994-96 (8th Cir. 1998) (dispute involving employees hired away from competing system manufacturer should be governed by Missouri law instead of Ohio law because defendant's actions of which plaintiff complained - including accessing and taking computer information, providing confidential information to new employer, and contract former employees of plaintiff - all occurred in the State of Missouri). Additionally, Siepman and Hammerslough are contemplating counterclaims related to their employment which would also be governed by Nevada law. In light of the above, the *forum non conveniens* factors favor litigation of this dispute in the State of Nevada.

## CONCLUSION

As set forth above, Defendants respectfully request that this Court grant their motion to dismiss Plaintiffs' Complaint because this Court lacks personal jurisdiction over

Defendants. In the alternative, Defendants request that this case be dismissed without prejudice on *forum non conveniens* grounds.

Dated this 25th day of May 2018.      Respectfully submitted,

By:    */s/ Holly N. Mancl*
        Holly N. Mancl
        MN Bar No. 0390690
        **FISHER PHILLIPS LLP**
        227 W. Trade Street, Suite 2020
        Charlotte, NC 28202
        Telephone: (704) 334-4565
        Facsimile: (704) 334-9774
        Email: hmancl@fisherphillips.com
        *ATTORNEY FOR DEFENDANTS*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

PROMOVE, INC., D/B/A LIGHTNING
LOGISTICS, AND LOGISYS, INC.
D/B/A BELTMANN INTEGRATED
LOGISTICS,

Court File No.: 0:18-cv-01196-WNW-
KMM

            Plaintiffs,

vs.

MARK SIEPMAN, JOSEPH
HAMMERSLOUGH, SUNSET
TRANSPORTATION LV, INC., AND
TANTARA TRANSPORTATION
GROUP,

            Defendants.

### CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR IN THE ALTERNATIVE, DISMISS BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*** with the Clerk of

Court using the CM/ECF system, which will automatically send notice of such filing to

Plaintiff's counsel, Thomas R. Revnew, trevnew@seatonlaw.com, and William E. Parker,

at wparker@seatonlaw.com.

Dated this 25th day of May, 2018.      Respectfully submitted,

                                  By:   */s/ Holly N. Mancl*
                                         **FISHER PHILLIPS LLP**
                                         *ATTORNEY FOR DEFENDANTS*

20