UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ProMove, Inc. and Logisys, Inc., | Case No. 18-cv-1196 (WMW/KMM) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| Mark Siepman, Joseph Hammerslough, Sunset Transportation LV, Inc., and Tantara Transportation Group, | |
| Defendants. | |

---

Plaintiffs ProMove, Inc., and Logisys, Inc. (collectively, Plaintiffs), brought this action against ProMove's former employees Mark Siepman and Joseph Hammerslough (the individual defendants) as well as Sunset Transportation LV, Inc., and Tantara Transportation Group (the corporate defendants), asserting multiple claims, including breach of contract, tortious interference with contract, and misappropriation of trade secrets. Defendants collectively move to dismiss for lack of personal jurisdiction or, alternatively, to transfer this case to the United States District Court for the District of Nevada. Defendants' motion to dismiss is granted in part and denied in part, and the motion to transfer venue is denied.

## BACKGROUND[1]

ProMove is a Minnesota corporation with its principal place of business in Las

---

[1] The events addressed in this background section are alleged in Plaintiffs' complaint, and they are accepted as true for the purpose of this pending motion to dismiss. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

Vegas, Nevada. Logisys, an affiliate of ProMove, is a Michigan corporation with its principal place of business in Chicago, Illinois.

The individual defendants are residents of Las Vegas, Nevada, and former employees of ProMove in Las Vegas. Tantara Transportation Group is a Michigan corporation with its principal place of business in Canton, Michigan. Sunset Transportation LV, Inc., is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Both corporate defendants are direct competitors of ProMove.

Prior to September 2012, the individual defendants owned and operated Lightning Logistics, LLC, in Las Vegas. Logisys purchased Lightning Logistics and retained the individual defendants as employees. The individual defendants, who were ProMove employees for approximately five years, executed employment agreements with ProMove that included confidentiality and non-compete clauses, as well as a choice-of-law and forum-selection clause stating that each party to the agreement "irrevocably submits itself to the non-exclusive personal jurisdiction of the Federal and State courts sitting in Minnesota."

Plaintiffs allege that, while employed by ProMove, the individual defendants made preparations to leave ProMove with the intent to begin employment with the corporate defendants, including the solicitation of ProMove's employees and customers on behalf of the corporate defendants. Plaintiffs allege that the corporate defendants knowingly assisted with this preparation. Plaintiffs also allege that, before leaving ProMove, Hammerslough copied proprietary and confidential information from ProMove computers with the intent to benefit himself, the corporate defendants, or both.

**ANALYSIS**

**I.   Defendants' motion to dismiss for lack of personal jurisdiction**

Because Defendants move to dismiss for lack of personal jurisdiction, Plaintiffs must make a prima facie showing that personal jurisdiction exists. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). To do so, Plaintiffs must plead sufficient facts to support a reasonable inference that the Defendants can be subjected to jurisdiction within the forum state. *Id.* The evidentiary showing required at the prima facie stage is minimal, *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010), but a plaintiff's prima facie showing is "tested, not by the pleadings alone, but by the affidavits and exhibits" supporting and opposing the motion to dismiss, *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (internal quotation marks omitted). When determining whether personal jurisdiction exists, the Court views the evidence in the light most favorable to the plaintiffs, resolving all factual conflicts in the plaintiffs' favor. *K-V Pharm.*, 648 F.3d at 592.

Minnesota's long-arm statute extends jurisdiction to the maximum limit permitted by due process. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (citing Minn. Stat. § 543.19). Because the Court applies state law when determining the bounds of its personal jurisdiction, *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), the Court need only determine whether its exercise of personal jurisdiction comports with due process, *Wessels*, 65 F.3d at 1431.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state such that personal jurisdiction over the defendant does not offend

"traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal quotation marks omitted). To meet this legal standard, a defendant must establish purposeful availment of the privilege of conducting activities within the forum state, which in turn invokes the benefits and protections of the forum state's laws. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014). When there are multiple defendants, the Court must assess each defendant's contacts with the forum state. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Personal jurisdiction over a defendant may be general or specific. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985). Here, only specific jurisdiction is at issue.[2] Accordingly, the alleged injury must have occurred in the forum state or have some other connection to the forum state such that the defendant's activities have been purposefully directed toward the forum state. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Burger King*, 471 U.S. at 472).

The Court considers three primary factors when deciding whether it has specific jurisdiction over the defendants: the nature and quality of such contacts with the forum state, the quantity of contacts, and the relation of the cause of action to the contacts. *K-V Pharm.*, 648 F.3d at 592. Two secondary factors, the interest of the forum state in providing a forum for its residents and the convenience of the parties, also are germane to

---

[2] A court may assert general jurisdiction over a defendant if the defendant's contacts are so "continuous and systematic" as to render the defendant "essentially at home" in the forum state. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011) (internal quotation marks omitted). Neither the contacts of the individual defendants nor the contacts of the corporate defendants meet this standard.

the Court's specific jurisdiction analysis. *Id*. Ultimately, whether the Court has personal jurisdiction over the defendants depends on the "totality of the circumstances." *Johnson*, 614 F.3d at 794.

### A. Individual Defendants

Plaintiffs seek to establish a prima facie showing of personal jurisdiction over the individual defendants based primarily on the employment agreements, which include a forum-selection clause that prescribes that each contracting party submits to personal jurisdiction in the state and federal courts of Minnesota.

"Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001). Here, however, the record does not include signed copies of the employment agreements. Based on this omission, Defendants argue that the forum-selection clause is not enforceable against them. But the question before the Court is not whether the contracts are enforceable. Rather, for personal jurisdiction, the central question is whether a defendant has purposefully availed itself of the laws of the forum state. *Fastpath*, 760 F.3d at 821. The presence of a valid forum-selection clause typically obviates the need to analyze a defendant's contacts with a forum state because the contract itself establishes the defendant's voluntarily consent to personal jurisdiction in the forum. *See Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 90 (Minn. 1991) ("With consent, resort to the constitutional test for personal jurisdiction is not required because the defendant obviously can reasonably anticipate being haled into court after consenting to jurisdiction." (internal quotation marks omitted)). The

legal issue here is whether the individual defendants, through their employment agreements, voluntarily consented to personal jurisdiction in Minnesota, not whether signed copies of the employment agreements are in the record.

Strong circumstantial evidence exists that the individual defendants voluntarily consented to the terms of the employment agreements, including the forum-selection clause. Before Logisys purchased Lightning Logistics in 2012, each individual defendant executed a Letter of Intent with Beltmann Group Incorporated (BGI)[3] addressing the terms of the sale. According to the letter, BGI would structure acceptable employment agreements for the individual defendants in light of the "importance of retaining key employees of [Lightning Logistics] after the closing date." When Paul Zagaria, the executive vice president of BGI and ProMove, inquired of both individual defendants by email whether they had signed their employment agreements, Hammerslough replied that he had signed the agreement and that he would be willing to resend a copy to Zagaria. Both individual defendants subsequently became employees of ProMove and continued in that capacity for approximately five years.

Moreover, other factors support the requisite "minimum contacts" for personal jurisdiction. The individual defendants were ProMove employees for slightly less than five years and, although there are no allegations that either traveled to Minnesota, both individual defendants were employees of ProMove, a Minnesota company. They both executed the Letter of Intent with BGI, also a Minnesota company. And that letter clearly

---

[3] BGI is an affiliate of the plaintiffs and is not a party to this case.

displayed in the letterhead BGI's Roseville, Minnesota address. Jeanne Considine, BGI's vice president of accounting, also stated by affidavit that each individual defendant "submitted expense reports directly to Minnesota via Federal Express on at least [a] monthly basis, and sometimes weekly." And these expense reports, as well as the individual defendants' paychecks, were processed in Minnesota.

Based on the totality of the circumstances, when the evidence is viewed in the light most favorable to Plaintiffs, Plaintiffs have made a prima facie showing that the individual defendants voluntarily consented to personal jurisdiction in Minnesota through their employment with ProMove. For these reasons, the Court denies Defendants' motion to dismiss for lack of personal jurisdiction with respect to each individual defendant.

### B.     Corporate Defendants

Plaintiffs argue that the corporate defendants are also bound by the forum-selection clause in the individual defendants' employment agreements. At issue here is whether a forum-selection clause in a contract to which the company is not bound is sufficient to meet the due process requirements of personal jurisdiction.

To advance its argument, Plaintiffs rely on *Medtronic, Inc. v. Endologix, Inc.*, in which Medtronic initiated a lawsuit against two former employees and their new employer, Endologix, in Minnesota state court. 530 F. Supp. 2d 1054, 1055 (D. Minn. 2008). After Endologix removed the action to federal court, Medtronic moved to remand the case to state court, citing a forum-selection clause in the employees' employment agreements. *Id.* at 1056. Endologix opposed the remand, arguing that Endologix was not bound by the forum-selection clause. *Id.* The district court disagreed, reasoning that the forum-selection

7

clause in the employment agreements applied because Endologix was so "closely related to the dispute" that it was foreseeable that Endologix would be bound by the clauses. *Id*. The motion for remand was granted. *Id.* at 1059.

The decision in *Medtronic* is distinguishable as the issue was not whether personal jurisdiction existed, and there was no consideration of whether the "closely-related-party" rationale satisfies constitutional due process for personal jurisdiction purposes. Without more, the presence of a forum-selection clause in a contract to which the corporate defendants were not parties, and of which they may have been completely unaware, is not sufficient to establish personal jurisdiction over the corporate defendants.

Plaintiffs also argue that the corporate defendants' tortious conduct subjects them to personal jurisdiction in Minnesota under the *Calder* "effects test." *See generally* 465 U.S. at 789-91. Under this test, Plaintiffs argue, the Court may assert personal jurisdiction over non-resident defendants who intentionally perform tortious acts for the purpose of directing their consequences to the forum state. *Johnson*, 614 F.3d at 796. But the effects test is narrowly construed. *Id.* at 797. And without additional contacts, the "mere effects" of a defendant's conduct felt in the forum state are insufficient to confer personal jurisdiction. *Id.*

Plaintiffs have not asserted that the corporate defendants engaged in direct and intentional conduct such that the corporate defendants were aware that the effects of the conduct would substantially impact Minnesota. Rather, Plaintiffs assert that the corporate defendants "market themselves to residents of Minnesota via their websites." Merely maintaining a commercial website that does not specifically target residents of a forum

8

state, however, is insufficient to confer personal jurisdiction. *See*, *e.g.*, *Bible & Gospel Tr. v. Wyman*, 354 F. Supp. 2d 1025, 1031 (D. Minn. 2005) (concluding that the operation of a commercial website not specifically directed at Minnesota or its residents was insufficient to confer personal jurisdiction under the effects test).

Because Plaintiffs provide no evidence of any other contacts between the corporate defendants and Minnesota, Plaintiffs have not made the requisite prima facie showing that exercising personal jurisdiction over the corporate defendants would be proper. The motion to dismiss for lack of personal jurisdiction is granted as to the corporate defendants.

## II. Defendants' motion to dismiss under *forum non conveniens* or to transfer to the District of Nevada

In light of the Court's conclusion that personal jurisdiction exists over the individual defendants, the Court must address the individual defendants' alternative argument that the complaint should be dismissed under the doctrine of *forum non conveniens*. But dismissing this case under the common-law doctrine of *forum non conveniens* is not appropriate. "[A] federal district court's power to dismiss a case properly within its jurisdiction under the common-law doctrine of forum non conveniens has been substantially eliminated by the federal transfer of venue statute, 28 U.S.C. § 1404(a)." *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 783 (8th Cir. 2009) (citing *Norwood v. Kirkpatrick*, 348 U.S. 29, 32 (1955)). Although Section 1404(a) codified the "relevant factors" considered under the doctrine of *forum non conveniens*, it eliminated the "harshest result" under the doctrine—outright dismissal. *Norwood*, 348 U.S. at 32. If an alternative federal forum exists, a district court does not have the power to dismiss this case. *Bacon*, 575 F.3d at 783.

In their reply memorandum—ostensibly in response to Plaintiffs' argument that dismissal under *forum non conveniens* is inapplicable—Defendants restyle their motion as one to "transfer to a more appropriate venue," as well as a motion to dismiss. As a general rule, such arguments are not entertained when raised for the first time in a reply brief. *See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) (citing *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003)); *see also* LR 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."). However, because Plaintiffs addressed whether transfer is appropriate in their memorandum opposing the motion to dismiss, and because the factors analyzed under Section 1404(a) are substantively the same as those applied in an analysis of *forum non conveniens*, *see Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013), the Court next addresses whether transfer is appropriate in the interests of judicial economy.

A district court may transfer a civil action, in the interests of justice, to any other federal district court that has jurisdiction when doing so is "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). A transfer of venue under Section 1404(a) "should not be freely granted," as federal courts "give considerable deference to a plaintiff's choice of forum." *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 884 (D. Minn. 2015) (internal quotation marks omitted). But a district court has much discretion in deciding such motions. *Id.* It is the movant's heavy burden to demonstrate why a case should be transferred. *Id.*

A district court in a typical case in which there is no applicable forum-selection

clause "must evaluate both the convenience of the parties and various public-interest considerations" when evaluating a motion to transfer venue under Section 1404(a). *Atl. Marine*, 571 U.S. at 62. But the analysis changes when the parties' contract contains a valid forum-selection clause, which must be given "controlling weight in all but the most exceptional cases." *Id.* at 63 (internal quotation marks omitted). This is because "[w]hen parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 66. The party resisting enforcement of the forum-selection clause must establish that the forum for which the parties bargained should be disregarded. *See id.* at 63.

Here, Defendants reiterate their arguments that "Plaintiffs have failed to demonstrate the existence of a binding agreement" containing a valid forum-selection clause. But this argument does not account for the "heavy burden" that rests with Defendants to demonstrate that transfer should be granted. *Bae Sys.*, 124 F. Supp. 3d at 884. At some point, the parties agreed to litigate disputes under the employment agreements in Minnesota, under Minnesota law. In light of the strong circumstantial evidence that the employment agreements were executed, the parties likely are bound by the forum-selection clause. Should the Court transfer this case to Nevada, as Defendants request, and the executed copies of the employment agreements were to surface during discovery, the forum-selection clause likely would be enforced with a transfer back to this District.

The Court is mindful that, as Plaintiffs argue, a Minnesota forum is inconvenient for the individual defendants, particularly Siepman, who has a medical condition that

impedes his travel. The Court also acknowledges that several of the participants in this case are located in Nevada, and that many of the events alleged in Plaintiffs' complaint took place there. But Defendants' burden "may not be met simply by showing that the [relevant factors] are evenly balanced or weigh only slightly in favor of transfer." *Id.* at 884; *see also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696-97 (8th Cir. 1997) ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." (internal quotation marks omitted)). Given the presumptive enforceability of the forum-selection clause and the "considerable deference" that the Court affords Plaintiffs' choice of forum, Defendants have not carried their "heavy burden" to demonstrate that the Court should transfer this case.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss, (Dkt. 9), is **DENIED** with respect to Defendants Mark Siepman and Joseph Hammerslough, **GRANTED** with respect to Defendants Sunset Transportation LV, Inc., and Tantara Transportation Group, and Plaintiffs' complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE** as to Sunset Transportation LV, Inc., and Tantara Transportation Group.

Dated: January 18, 2019                    s/Wilhelmina M. Wright
                                           Wilhelmina M. Wright
                                           United States District Judge